UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

FRANCIS P. MONTICELLI, Individually,
and on behalf of all others similarly situated,

                       Plaintiff,                       Docket No.: 09-CIV-9505

       -against-                               **CLASS ACTION**
                                                                                              **COMPLAINT AND**
                                                                                               **JURY DEMAND**

APPLE, INC., and AT&T MOBILITY, LLC,

                       Defendants.

-----------------------------------------------------------------------X

        Plaintiff Francis P. Monticelli ("Plaintiff"), by his attorneys, the Law Offices of Robert M. Brill, LLC, and Becnel Law Firm, L.L.C., hereby commences this action individually and on behalf of the Class identified below, and seeks class status on behalf of himself and the Class as described below, and alleges upon information and belief as follows:

## NATURE OF CASE

        1. This is a class action arising from the unfair, deceptive, and fraudulent practices by defendants Apple, Inc. ("Apple"), and AT&T Mobility, LLC ("AT&T"), with respect to the marketing, advertising, and sale of the iPhone 3G and 3-GS products (collectively, the "iPhone"), brought by plaintiff on his own behalf, and on behalf of a class of others similarly situated, those persons being all residents of the State of New York who, between July 1, 2008, and the date of final judgment or settlement in this action, have purchased an iPhone from either AT&T or Apple, for person, family, or household use.

## THE PARTIES

2. Plaintiff is an individual residing in the State, City, and County of New York, who purchased an iPhone and an AT&T voice and data service plan for the iPhone in the State of New York.

3. Apple is a corporation organized and existing under the laws of the State of California, maintains its principal place of business in Cupertino, California, and conducts and transacts business within this Judicial District.

4. Apple manufactures, markets, and sells the iPhone, among other consumer electronic devices.

5. AT&T is a limited liability company organized and existing under the laws of the State of Delaware, maintains its principal place of business in Atlanta, Georgia, and conducts and transacts business within this Judicial District.

6. AT&T markets and sells the iPhone, and, upon information and belief, pursuant to a written agreement with Apple, is the exclusive provider of wire and data services to iPhone customers.

7. Apple and AT&T are collectively referred to as the "Defendants."

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1332(d)(2) (diversity jurisdiction), in that (i) there is complete diversity (the plaintiff is a citizen of New York and defendants are domiciled in California and Delaware, and, in all events, not New York, and, to the extent pertinent, maintain their principal places of business in California and

Georgia, and, in all events, not New York), ii) the amount in controversy exceeds $75,000., exclusive of interest and costs, and (iii) there are 100 or more members of the proposed Plaintiff Class.

9. Venue lies in this district, pursuant to 28 U.S.C. §1391, because plaintiff resides in this Judicial District, purchased his iPhone in this Judicial District, and a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this Judicial District. In addition, defendants do business and/or transact business in this Judicial District, and, therefore, are subject to personal jurisdiction in this Judicial District and reside here for venue purposes.

## SUMMARY OF FACTS COMMON TO ALL CLAIMS

10. In January, 2007, the sales of the iPhone commenced.

11. The iPhone is a combination of an iPod (an electronic device that stores thousands of music files and plays them back for the listener), and a cellular mobile telephone (which allows users to engage in wireless communication while mobile), with an incredible amount of creative functionality.

12. The cell phone portion of the iPhone works exclusively with the AT&T cellular phone network. Defendants Apple and AT&T commenced the iPhone as a joint venture. Both AT&T and Apple sold, and continue to sell, the iPhone in their respective stores.

13. The original version of the iPhone was called the "2G." The next generation, launched in July 2008, was called the "3G." The most recent version, launched in June, 2009, is called the "3G-S."

14. Since its creation, one flaw of the original 2G iPhone was that it did not allow "Multimedia Messaging Service," or "MMS," which, among other things, allows users to send a

picture to another user's cell phone.

15. At all pertinent times, Apple advertised extensively that the new version of iPhone, the 3G, as well as the more recent version of the iPhone, the 3G-S, would allow MMS. Apple's advertisements, in print and video format, and on television, the Internet, the radio, newspapers, and direct mailers, all touted the availability of MMS on the iPhone.

16. Similarly, at all pertinent times, AT&T advertised that the 3G and 3G-S iPhones would allow MMS.

17. MMS functionality was one of the reasons people chose to buy or upgrade to a 3G or 3G-S. MMS has been available on other types of cell phones for many years.

18. Upon launching the iPhone, Apple made the following representations concerning the iPhone on its website:

(i) *"**Send MMS:** Take a photo or shoot some video, then send it via Messages. You can also send audio recordings from within Messages, information from Contacts, and directions from Maps."*

(ii) *"**Sending Photos and Videos:** You can take a photo or make a video (Phone 3GS only) from within Messages and include it in your conversation with another MMS-capable device."*

19. AT&T also made the following representations concerning the iPhone on its website:

(i) ***Messages:** "Use messages to send text, photos, audio, video, and more. Forward a whole message or just the important parts."*

20. After the 3G-S iPhone came out in June, 2009, customers, including plaintiff, who purchased the 3G-S iPhone began to realize that MMS was not available.

21. In response, AT&T published the following in the AT&T Answer Center page of their

website for problems related to MMS: "*Customers who are sent a MMS message and own a non-MMS capable device will receive a text message instead of an actual MMS message. The message will contain the website address of www.viewmymessages.com/1 or www.viewmymessage.com/2 as well as a user name and password. To view the MMS message, please access the website from a computer and enter the user name and password provided in the text message.*"

22. Incredibly, AT&T was directing customers interested in MMS **to go to a computer** to view the message.

23. The AT&T Answer Center also urged the following solution for the problem *"Send, Receive, or Delete a Picture, Audio, or Video Multi-Media Message (MMS) with iPhone":*

"***Goal:*** *Send, Receive, or Delete a Picture, Audio or Video Multi-media Message with iPhone.*

***Symptom:*** *Unable to Send, Receive, or Delete a Picture, Audio, or Video Multimedia Message with iPhone.*

***Fix****: iPhone does not support sending, or receiving picture, audio, or video multimedia messages. If an MMS is sent to the iPhone, it will receive a text message instead that contacts a link to a website address where the message can be viewed.*"

24. The so-called "Fix" was essentially to say "tough luck" to purchasers of the 3G and 3G-S iPhone.

25. In early 2009, sales representatives for both Apple and AT&T began assuring customers that MMS would be available for both the 3G and the 3G-S beginning in June, 2009, when the new iPhone OS 3.0 Software Update would become available.

26. At all pertinent times, representatives in Apple and AT&T stores assured customers that

with this new software update, which could be downloaded for free, MMS would be available for the iPhones.

27. In the spring of 2009, AT&T began a huge sales drive to sell its older 3G models in preparation for the launch of 3G-S. AT&T lowered the price of a 3G to less than $100., and assured customers that the new 3.0 Software Upgrade would solve all the problems with the iPhone. Apple posted on its website, on the "iPhone OS 3.0 Software Update" page," that MMS would be available, so that customers could "send MMS messages and include photos, audio, and contact info. Even tap to snap a picture right inside Messages." A graphic showed the familiar iPhone text message bubbles with a picture inserted.

28. Millions of customers, including New York residents, such as plaintiff, purchased the 3G or 3G-S, waiting for the day in June, 2009, when the new software update would be available, which would allow MMS. Unfortunately, after downloading the new 3.0 Software Update application, MMS still did not work on both the 3G and 3G-S.

29. The Apple troubleshooting page explained the problem as follows:

"*To send and receive MMS messages on your iPhone 3G, do the following:*

*1. Verify that your iPhone and wireless carrier meet the system requirements. To use MMS you need:*

*(i) iPhone OS 3.0 installed on iPhone 3G. The original iPhone does not support sending or receiving MMS messages. Install iPhone OS 3.1 if necessary;*

*(ii) a wireless carrier that supports MMS;*

*(iii) A coverage area in which you can place and receive a call, and access the Internet using Safari on your iPhone (3G network coverage recommended).*

*2. If **this article** shows that your carrier supports MMS, you should see MMS Messaging in the Settings>Messages>General screen as shown below."*

30. The "this article" phrase was a blue-colored hyperlink. Clicking on said hyperlink led to a page showing several countries. Clicking on North America, and viewing the graph for the United States, under the heading "AT&T," the screen showed that AT&T was and is not a carrier that offers MMS. Of course, AT&T is the only carrier in the United States used by the iPhone.

31. Thus, it became clear that AT&T's network does not support MMS.

32. When calling Apple Customer Support, it was revealed that AT&T has never upgraded its network so as to support the functionality necessary for MMS.

33. Accordingly, the iPhone cannot offer MMS as claimed and represented by the defendants.

34. The only excuse that is offered by AT&T and Apple is a mouseprint disclaimer on the website, in barely readable font, which reads "*MMS Support from AT&T coming in late summer.*"

35. Upon information and belief, none of the representatives in either the Apple or AT&T stores advised or advise consumers that the MMS functionality of the phones would work only after the AT&T network is upgraded to support MMS in "late summer."

36. Upon information and belief, to date, AT&T has failed to upgrade its network to support MMS.

37. When and if AT&T upgrades its network, the millions of iPhone purchasers will get what they bargained for in terms of MMS. In the meantime, all the millions of purchasers of the 3G and 3G-S iPhone have been deceived and cheated out of what they thought they were purchasing - a cell phone with MMS functionality.

38. Apple and AT&T representatives continue to misrepresent and/or conceal, suppress, or omit material facts to customers in their stores about the MMS functionality of the 3G and 3G-S iPhones.

39. Plaintiff and the Class members have been misled by Defendants' misrepresentations and false advertising into purchasing any paying for a product that was not what was represented and advertised, and they have, as a direct result, suffered actual damages, in that they have been deprived of the benefit of their bargain and have spent money on a product that lacked the value they were led by Defendants to believe it had. In doing so, plaintiff and the class members saw and relied upon the representations and advertising by the Defendants, the representations were material to their decisions to purchase the iPhones, their reliance was reasonable given the reputation of the Defendants as reliable and trustworthy companies.

## NAMED PLAINTIFF'S FACTUAL ALLEGATIONS

40. In April, 2009, plaintiff Monticelli went into an Apple store located in New York City, and was interested in purchasing a cell phone with MMS functionality.

41. The stores representative misrepresented and/or concealed, suppressed, or omitted material facts as to the iPhone having MMS functionality.

42. Plaintiff purchased the iPhone for personal, family and household purposes.

43. When the 3.0 Software Upgrade became available, Plaintiff downloaded said software for his iPhone 3G.

44. Despite the download, MMS still did not work on plaintiff's iPhone.

45. In this way, plaintiff learned that AT&T had not upgraded its network and may not do so for some time.

46. Accordingly, plaintiff has been damaged in that he has been unable to send MMS messages, and did not receive what he bargained for when he purchased the iPhone.

## SUMMARY OF CLASS ALLEGATIONS

**Numerosity of the Class.**

47. Plaintiff brings this action as a class action on behalf of himself and all others similarly situated for the purpose of asserting claims alleged in this complaint on a common basis. Plaintiff's proposed class, as defined under Federal Rules of Civil Procedure 23(b)(3), includes thousands of iPhone 3G and 3G-S purchasers from Apple and AT&T who are similarly situated to plaintiff, and who reside in the State of New York.

48. Plaintiff proposes to act as a representative of the following class comprised of:

**All residents of the State of New York who, between July 1, 2008 and the date of final judgment or settlement in this action, have purchased a 3G or 3G-S iPhone from either AT&T or Apple, for personal, family, or household use.**

49. The class is so numerous that joinder of all issues is impractical. Similarly, the class is so numerous that joinder of all members is impractical.

50. Plaintiff is unable to state the exact number of class members without discovery of the defendants' records; however, upon information and belief, and based on published news reports, over a million customers purchased the 3G iPhone the day it became available. Many of those customers are located in the State of New York. It is estimated that the Class will be composed of at least 10,000 individuals.

51. Plaintiff's class will be claiming damages for the 3G or 3G-S iPhone they purchased. A 3-G iPhone was selling from anywhere between $100 and $500.

52. Additionally, no attorney would have the financial resources to litigate this case against

opposition from Defendants when the potential for recovery is so small for each class member. Therefore, joinder of all similarly situated plaintiffs is appropriate.

**Predominance of Common Questions of Law and Fact.**

53. The claims asserted by plaintiffs on behalf of himself and all similarly situated Class members present questions of fact or law common to the class, including, *inter alia*, whether defendants engaged in deception and concealment in making claims that MMS was available on the 3G and 3G-S.

54. Questions of law and fact common to the members of the class predominate over questions affecting individual members. The common questions of law and fact include, but are not limited to, the following:

**54A. Fact Questions:**

a) Did the Defendants know that AT&T had not upgraded its network to support MMS, and, if so, when did they gain this knowledge?;

b) Did the Defendants know that most customers viewed MMS as an important functionality;

c) Did the Defendants conceal from consumers that i) AT&T had not upgraded its network to support MMS and had no plans to do so for many months; and (ii) the 3.0 Software Upgrade would not fix the problem and make MMS available (by itself)?;

d) Were Defendants aware of alternative methods of disclosure, which would have more adequately warned customers of the unavailability of MMS and the reasons for the non-availability of MMS;

e) Did the Defendants market and advertise their 3G and 3G-S phones as supporting MMS with no mention, or little mention, of the fact that the AT&T network was not equipped to support

MMS;

f) Did the salespersons at Apple and AT&T have any scripts or training materials, which would provide them with knowledge or information as to the fact that the AT&T network does not support MMS, or any advice as to when the AT&T network will be able to support MMS;

g) According to marketing research of Apple and AT&T, is MMS functionality an important decision driver for residential consumers when buying iPhones;

h) When will AT&T have finished its network upgrade so as to support MMS;

i) Did any officials from AT&T or Apple believe that the advertisements to customers relating to MMS were misleading to consumers?;

j) Did AT&T or Apple receive complaints from consumers about the lack of MMS functionality on the 3G and 3G-S iPhones, and what was Defendants' response?;

k) What did Defendants tell their own managers and employees internally about MMS functionality on the 3G and 3G-s iPhones?;

l) Were any internal committees or work groups created by Defendants, respectively, to solve the MMS problem, and what was said in such meetings concerning the MMC problems?; and

m) Why did Apple and AT&T not tell the truth to customers about MMS functionality when said customers were buying said product in the defendants' respective store?

**54B. Legal Questions:**

a) Did the Defendants engage in an unfair trade practice in connection with the sale or advertisements of merchandise when they represented to New York consumers that their iPhones would have MMS functionality?;

b) Did the Defendants employ any deception, fraud, false pretense, false promise, or

misrepresentation, in connection with the sale or advertisement of merchandise when they represented to New York consumers that their iPhones would have MMS functionality?;

c) Did the Defendants employ any deception, fraud, false pretenses, false promise, or misrepresentation, in connection with the sale or advertisement of merchandise when they represented to New York consumers that the 3.0 Software Upgrade would allow their iPhones to have MMS functionality?

d) Did the Defendants conceal, suppress, or omit material facts when they failed to reveal to consumers that: (i) the network of AT&T - the exclusive phone network for the iPhone - did not support MMS functionality; (ii) AT&T would not have its network upgraded for many months; and (iii) the 3.0 Software Upgrade would not, by itself, solve the problem?;

(e) To what extent, and in what amounts, was plaintiff and the class damaged by Defendants' unlawful actions?

(f) Do the Defendants have affirmative defenses, which are common to all class members?

**Typicality.**

55. The claims asserted by plaintiff on behalf of himself are typical of the other Class members' claims in that the other Class members also received similar representations about MMS, also purchased the Iphone based on said Representations, and have all similarly suffered harm as a result Defendants' violations of law, as alleged herein.

**Adequacy of Representation.**

56. Plaintiff will fairly and adequately represent and protect the interests of the class because (i) plaintiff has retained counsel experienced in the prosecution of such litigation and counsel will adequately represent the interests of the class; (ii) plaintiff and his counsel are aware of no conflicts

of interest between plaintiff and absent class members or otherwise; and (iii) plaintiff is knowledgeable concerning the subject matter of this action and will assist counsel in the prosecution of this litigation.

**Superiority.**

57. A class action provides a fair and efficient method for adjudicating this controversy and is superior to the other available methods of adjudication in that (i) neither the size of the class, nor any other factor, make it likely that difficulties will be encountered in the management of this class as a class action; (ii) the prosecution of separate actions by individual class members, or the individual joinders of all class members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the Courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each member of the class; (iii) because of the disparity of resources available to Defendants versus those available to individual class members, prosecution of separate actions would work a financial hardship on many class members; and (iv) the conduct of this action as a class action conserves the resources of the parties and the Court system and protects the rights of each member of the class and meets all due process requirements as to fairness to all parties. A class action is also superior to maintenance of these claims on a claim by claim basis when all actions arise of the same circumstances and course of conduct.

**AS AND FOR A FIRST CAUSE OF ACTION**

**Unfair and Deceptive Trade Practice**
**In Violation of New York General Business Law §§349 and 350**

58. Plaintiff, on behalf of himself and all others similarly situated, repeats and realleges ¶¶

1 through __, as if set forth fully at length herein.

59. Defendants engaged in commercial conduct by selling the iPhone.

60. Defendants misrepresented and omitted material information regarding the iPhone.

61. At all pertinent times, defendants engaged in false advertising with respect to the iPhone.

62. Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of the iPhone in violation of the New York General Business Law ("GBL") §349 and §350 and other similar statutes.

63. New York has enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices. Defendants violated these statutes by knowingly and falsely representing that the iPhone 3G and 3G2 was fit to be used for the purposes for which it was intended and represented, when Defendants knew it was ineffective and defective.

64. Defendants engaged in the deceptive acts and practices alleged herein in order to sell the iPhone to the public, including plaintiff and class members.

65. As a direct and proximate result of the defendants' violations of GBL §349 and §350 and other similar statutes, plaintiff and the class members have suffered damages. Plaintiff and the class members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees.

**AS AND FOR A SECOND CAUSE OF ACTION**

### (Fraudulent Concealment and Conspiracy to Defraud)

66. Plaintiff, on behalf of himself and all others similarly situated, repeats and realleges ¶¶ 1 through __, as if set forth fully at length herein.

67. At all pertinent times during the course of dealings between Defendants and plaintiff, members of the class, and/or the public in general, Defendants misrepresented the functionality of the iPhone for its intended use in making claims that MMS was available through the 3G and 3G-S versions of the iPhone (the "Representations").

68. At all pertinent times, defendants acted intentionally and willfully.

69. At all pertinent times, defendants knew that plaintiff was relying on the Representations and the truth of the Representations.

70. At all pertinent times, defendants knew that the Representations were false or would become false.

71. At all pertinent times, defendants knew that a failure of the Representations would injure plaintiff.

72. At all pertinent times, defendants acted in concert and in conspiracy with respect to the dealings with purchasers of the iPhone, including plaintiff, with intent to deceive and defraud said purchasers.

73. At all pertinent time, defendants knew that AT&T and Apple would not have the ability to supply MMS for the iPhone sold to plaintiff.

74. Defendants were under a duty to disclose to plaintiff and the members of the Class, and the general public that MMS was not available on the 3G and 3G-S iPhone.

75. The Defendants had sole access to material facts concerning the defective nature of the

iPhone.

76. The Defendants' concealment and omissions of material facts concerning, *inter alia*, the availability of MMS on the iPhone, were made purposefully, willfully, wantonly, and or recklessly, to mislead plaintiff and the members of the class, and the general public, to cause them to purchase the iPhone.

77. The Defendants knew that plaintiff and the members of the Class and/or the public in general had no way to determine the truth behind defendants' concealment and omissions, and that these included material omissions of facts concerning the iPhone, as set forth herein.

78. As a direct and proximate result of the foregoing acts and omissions, plaintiff and the class members have suffered damages. Plaintiff and the class members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees.

## **AS AND FOR A THIRD CAUSE OF ACTION**

### **(Unjust Enrichment)**

79. Plaintiff, on behalf of himself and all others similarly situated, repeats and realleges ¶1 through __, as if set forth fully at length herein.

80. Defendants have received benefits from plaintiff and the members of the Class and/or the public in general in their purchase of the iPhone.

81. By failing to disclose the defective nature of the iPhone, defendants have been unjustly enriched.

82. As a direct and proximate result of the foregoing, plaintiff and the class members have suffered damages. Plaintiff and the class members are entitled to compensatory damages, equitable

and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation)

83. Plaintiff, on behalf of himself and all others similarly situated, repeats and realleges ¶1 through __, as if set forth fully at length herein.

84. Defendants misrepresented, concealed, suppressed, or omitted the following material facts in connection with the sale and advertisement of 3G and 3G-S iPhones to consumers in New York State:

    (i) AT&T has not upgraded its network to support MMS, and, therefore, MMS would be unavailable on iPhones until the network were upgraded;

    (ii) AT&T would not have its network upgraded for many months;

    (iii) The 3.0 Software Upgrade would not, by itself, solve the problem and make MMS available.

85. Defendants failed to exercise ordinary care in their advertising, marketing, and sale of the iPhone to plaintiff, the members of the class, and/or the public in general.

86. Defendants breached their duty in representing the functionality and effectiveness of the iPhone to plaintiff, the members of the class, and/or the public in general.

87. As a direct result of the deception, misrepresentation, unfair practices, concealment, suppression, and omission by defendants, plaintiff has suffered an ascertainable loss of money, namely, the difference in value between the iPhone as represented and the iPhone as it actually exists.

88. Defendants' actions were negligent, if not intentional, without a justification or excuse.

89. As a direct and proximate result of the foregoing acts and omissions, plaintiff and the class members have suffered damages. Plaintiff and the class members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees.

**AS AND FOR A FIFTH CAUSE OF ACTION**

**Permanent Injunction**

90. Plaintiff, on behalf of himself and all others similarly situated, repeats and realleges ¶1 through __, as if set forth fully at length herein.

91. Based on the foregoing, plaintiff, and all similarly situated individuals, are entitled to an order and judgment permanently enjoining defendants from engaging in unfair and deceptive practices with respect to the iPhone.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff, and all similarly situated individuals who do not opt out of this action, demand as follows:

i) an order, entered as soon as practicable, certifying this case as a class action under Rule 23;

ii) an order directing that appropriate notice to class members be delivered;

iii) damages for plaintiff and other class members in an amount to be determined at trial, including pre-judgment and post judgment interest at the maximum rate allowable at law;

iv) equitable, injunctive and declaratory relief, including permanently enjoining defendants from engaging in unfair and deceptive practices with respect to iPhone in violation of

the consumer protection statutes;

> v) treble, exemplary, and/or punitive damages in an amount to be determined at trial;
>
> vi) awarding reasonable attorneys' fees and costs;
>
> vii) awarding all statutory damages; and
>
> viii) granting such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial of its claims for relief herein before a jury to the extent permitted by law.

Dated: New York, New York
       November 12, 2009

                                            **LAW OFFICES OF ROBERT M. BRILL, LLC**

                                            By: /s/ *[signature]*
                                            Robert M. Brill, Esq. (RB-1830)
                                            Anita M. Jaskot, Esq. (AJ-6613)
                                            880 Third Avenue, 13th Floor
                                            New York, New York 10022
                                            Tel: (212) 935-7900
                                            Fax: (212) 935-6524
                                            Email: brillesq@aol.com
                                                           jaskot@mindspring.com

                                            **BECNEL LAW FIRM, L.L.C.**
                                            DANIEL E. BECNEL, JR. (La. Bar No. 2926)
                                            MATTHEW B. MORELAND (La. Bar No. 24567)
                                            P.O. Drawer H
                                            106 W. 7th Street
                                            Reserve, La 70084
                                            Tel: (985) 536-1186
                                            Fax: Fax (985) 536-6445
                                            dbecnel@becnellaw.com

                                            *Attorneys for Plaintiffs*